1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE AGUILAR,

                              Aguilar,

    v.

MICHAEL KOEHN, *et al.,*

                              Defendants.

3:16-cv-00529-MMD-CBC

**A M E N D E D**[1]
**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**[2]

11      This case involves a civil rights action filed by Aguilar Jose Aguilar ("Aguilar")

12   against Defendants Michael B. Koehn, M.D., Warden Renee Baker, and Sergeant Curtis

13   Kerner. (Collectively referred to as "Defendants"). Currently pending before the Court is

14   a motion for summary judgment filed by Defendants. (ECF No. 42.) Aguilar responded,

15   (ECF No. 53), and Defendants replied. (ECF No. 62). In addition, Aguilar also filed a

16   cross-motion for summary judgment, (ECF No. 54), which Defendants responded to.

17   (ECF 64). Having thoroughly reviewed the record and papers, the Court hereby

18   recommends that Defendants' motion for summary judgment be granted, (ECF No. 42),

19   and Aguilar's Cross-Motion for summary judgment should be denied. (ECF No. 54.)

20   **I.      PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

21         A.      Procedural History

22      Aguilar is an inmate in the custody of the Nevada Department of Corrections

23   ("NDOC") and is currently housed at Ely State Prison ("ESP"). On June 11, 2016, Aguilar

24

25

26

27

28

---

[1]      This amendment supersedes the report and recommendation ECF No. 66 as it corrects a typographical error on page 17 listing defendants' motion for summary judgment as ECF No. 57.  The docket number has been corrected to ECF No. 42.

[2]      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1  commenced a civil action in the Seventh Judicial District Court of the State of Nevada:
2  *Aguilar v. Nevada ex rel., Baker, Koehn and Kerner*, Case No. CF-1607007, Dept. I,
3  which was removed to federal court on September 9, 2016. (ECF No. 1.)

4      Pursuant to 28 U.S.C. § 1915A(a), the Court screened Aguilar's complaint on
5  August 3, 2017 and allowed Counts I through V to proceed. The Claims arise from a
6  series of events involving Mr. Aguilar's medical treatment while in custody.

7      B.    Factual Background

8      The events giving rise to Aguilar's claims, as alleged in the Complaint, are as
9  follows. On May 18, 2015, Aguilar saw Dr. Koehn concerning a possible herniated disc
10  and a pinched nerve in his back. (ECF No. 1-2 at 4.) Dr. Koehn gave Aguilar "simple
11  pain medication and analgesic balm." (*Id.* at 5.) On June 29, 2015, Aguilar requested to
12  see medical because he was in "excruciating pain" and the pain medication was not
13  working. (*Id.*) However, Dr. Koehn refused to see Aguilar for four weeks. (*Id.*)

14      Thereafter, on July 20, 2015, Dr. Koehn refused to see Aguilar again despite
15  Aguilar's "extreme, excruciating pain" and the numbness in his back. (*Id.*)  At 6:00 p.m.,
16  Aguilar could no longer take the pain and collapsed in his cell. (*Id.*) Prison officials took
17  Aguilar to the infirmary and left him unattended in the infirmary for three days, at which
18  point he was provided pain shots to numb Aguilar's back.  (*Id.*)

19      On July 30, 2015, Dr. Koehn prescribed Aguilar high blood pressure medication.
20  (*Id.*) Aguilar told Dr. Koehn that he had never had high blood pressure and had never
21  taken medication for it. (*Id.*) Dr. Koehn never informed Aguilar of the possible health risks
22  or side effects associated with the medication. (*Id.* at 5-6.) A couple of days later, Aguilar
23  informed a nurse that he was not feeling good, felt very weak, and felt dizzy with vertigo.
24  (*Id.* at 6.) The medical staff told Aguilar to continue taking his high blood pressure
25  medication and that everything would be fine. (*Id.*)

26      On August 10, 2015, at 1:00 a.m., Aguilar started to vomit and have seizures in
27  his cell. (*Id.*) Both the medical and CERT teams arrived to see Aguilar vomiting and
28  having uncontrollable seizures. (*Id.*)  At 6:00 a.m., during a seizure, Aguilar blacked out.

1    (*Id.*) At this point, medical and CERT teams took Aguilar to the infirmary where someone

2    ordered officials to take Aguilar to the hospital. (*Id.*) Before, Aguilar could go to the

3    hospital, Kerner screamed and yelled multiple expletives at Aguilar for two hours. (*Id.*)

4    Kerner told Aguilar, "you better confess that you took drugs/narcotics or else you will not

5    get any medical attention." (*Id.*)

6        At 10:00 a.m., prison officials transported Aguilar to Ely Washbrook Hospital. (*Id.*)

7    After taking blood tests, hospital officials found no traces of any narcotics or drugs in

8    Aguilar's blood system. (*Id.* at 8.) However, after analyzing Aguilar's blood tests, the

9    doctors determined that the cause of Aguilar's seizures was the high blood pressure

10   medication. (*Id.*) On August 12, 2015, prison officials transported Aguilar back to ESP's

11   infirmary where the medical staff gave Aguilar the exact same high blood pressure

12   medication. (*Id.*)

13       In Count I, Aguilar alleges an Eighth Amendment violations against Dr. Koehn for

14   refusing to administer proper medical care related to back pain and refusing to see

15   Aguilar for treatment. (*Id.*) Aguilar asserts that he was left untreated and was in extreme

16   pain for a total of eighteen (18) days. (*Id.*, at 10.) In Count II, Aguilar alleges an Eighth

17   Amendment violation against Dr. Koehn for prescribing Aguilar high blood pressure

18   medication and for failing to warn him of the adverse health risks. (*Id.* at 12.) In Count III,

19   Aguilar alleges an Eighth Amendment violations for cruel and unusual punishment

20   against Kerner based upon his alleged yelling and threatening Agular to confess taking

21   narcotics when he was taken to the infirmary. (*Id.* at 14.) In Count IV, Aguilar alleges an

22   Eighth Amendment violation against Dr. Koehn for prescribing Aguilar high blood

23   pressure medication that caused him to suffer from seizures. (*Id.* at 18.). In Count V,

24   Aguilar alleges an Eighth violations against Kerner for deliberate indifference to his

25   medical need and Baker based on supervisory liability. (*Id.* at 21.)

26       C.    Motions for Summary Judgment

27       On August 15, 2018, Defendants filed a motion for summary judgment seeking

28   dismissal of all the claims. (ECF No. 42.) As to Counts II, III, IV, and V, Defendants

argue Aguilar failed to properly exhaust all available administrative remedies. (ECF No. 42 at 9 – 12.) As to Counts I, and IV, Defendants argue they were not deliberately indifferent toward Aguilar's medical needs because they believed he was malingering about his back pain, and that he had high blood pressure. (*Id.* at 14 – 17.) As to Count III, Defendants argue Aguilar's claim is implausible. (*Id.* at 17.) As to Count V, Defendants argue Warden Baker lacked the personal participation required for a § 1983 suit. (*Id.* at 18.)

In response, and cross-motion for summary judgment, Aguilar argues Defendants' motion for summary judgment should not be granted. (ECF Nos. 53; 54.) Aguilar broadly argues Defendants have failed to provide any admissible evidence to support their motion. (ECF No. 54.) As to the deliberate indifference claim against Koehn, Aguilar argues that he was not malingering, and that Koehn was aware of this fact. (ECF No. 54 at 2 – 3.) As to the deliberate indifference claim against Sergeant Kerner, Aguilar argues that Kerner was present at the time of the incident, and this can be proved with circumstantial evidence. (ECF No. 54 at 3 – 4.) As to the supervisory liability claim against Warden Baker, Aguilar argues that Baker did have sufficient personal participation because she was aware of the grievances. (ECF No. 54 at 4.)

In reply, Defendants argue that none of Aguilar's assertions are supported by the record. (ECF No. 64 at 3 – 6.). Defendants argue that, while Aguilar refers to the record, he either misinterprets evidence or make conclusory allegations. (ECF No. 64.) On the other hand, Defendants argue they have supported each of their assertions with admissible evidence which proves their version of the facts. (*Id.* at 6.)

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify

which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.   *Id.*   Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.   *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.   *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must

come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.    DISCUSSION**

A.    Legal Standard for Exhaustion under the PLRA

The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). *Ross v. Blake*, ___U.S.___, 136 S.Ct. 1850, 1854-55 (2016). Therefore, pursuant to the PLRA, an inmate alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983 *must* exhaust *all* the available administrative remedies prior to seeking judicial relief. 42 U.S.C. § 1997e(a); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (exhaustion of administrative remedies is a mandatory requirement); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted).

In order to properly exhaust administrative remedies, the inmate must use "all steps the prison holds out, enabling the prison to reach the merits of this issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). This requires complete "compliance

with the agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). As exhaustion is mandatory under the PLRA, and the Supreme Court recently made clear that the courts do not have discretion to excuse the exhaustion requirement. *Ross*, 136 S.Ct. at 1854. Rather, the Supreme Court made abundantly clear that the courts may not excuse the exhaustion requirements under any type of special circumstances or extenuating circumstances. Rather, the inmate must strictly comply with the administrative procedures and processes required in order to properly exhaust. *Id.* The only exception is the exception provided by the statute, which states that a prisoner need not exhaust remedies if they are not available to the inmate. 42 U.S.C. § 1997e(a); *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010).

B.   NDOC Inmate Grievance System

The administrative remedies available to an inmate are determined, by the prison's own grievance process, not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In the NDOC, when an inmate has a grievance, the administrative remedies available to them are the processes described in Administrative Regulation ("AR") 740. (ECF No. 42, at Ex. L.) The inmate grievance process has three distinct steps: an informal level, a first level, and a second level. (*Id.*, at 4 – 9, §§ 740.5 – 07.) The inmate begins the grievance process by filing an informal level grievance. (*Id.* at 4 – 7, § 740.05.) At the informal level, inmates must submit all documentation and factual allegations available to them. (*Id.* at 6.) Failure by the inmate to submit a proper Informal Grievance form shall constitute abandonment of the inmate's grievance at this, and all subsequent levels. (*Id.*) Following receipt of a decision at the informal level of review, an inmate who disagrees with the decision may appeal to the first formal level of review within five (5) days. (*Id.* at 6 – 7, § 740.06.) Similarly, if an inmate disagrees with a decision at the first level of review, the inmate may appeal to the second level of review within five (5) calendar days of receipt of the prisoner's decision. (*Id.* at 8, § 740.07.) If an inmate fails to file a timely appeal from the first level to the second level, the inmate's appeal is procedurally barred. (*Id.* at 8, § 740.06(4)(A).) When this occurs, an inmate cannot

1  restart the grievance process on the same issue as this is considered an abuse of the

2  inmate grievance process. (*Id.* at 10, § 740.09(2)(B).)

3      C.   <u>Analysis</u>

4          1.   *Counts II and IV – Defendant Koehn*

5      Aguilar alleges that Koehn was deliberately indifferent to his medical needs

6  based on Koehn's prescription of high blood pressure medication to Aguilar.  (ECF No.

7  1-2, pp. 11 – 12.) Further, Aguilar alleges that Koehn failed to warn of the potential side

8  effects of taking the high blood pressure medication. (ECF No. 1, at Ex. 2, pp. 17 – 19.)

9  Defendants argue that Aguilar's failure to mention or grieve any issues related to high

10  blood pressure medication at the informal level means that he did not properly exhaust

11  his administrative remedies on these claims. (ECF No. 42, at 10 – 11.)

12      In opposition, Aguilar does not present any evidence to show that he did in fact

13  file an informal grievance regarding Koehn prescribing high blood pressure medication.

14  (ECF No. 54.) Defendants acknowledge that Aguilar references high blood pressure

15  medication in the first and second level of grievance number 2006-30-05091. (ECF No.

16  42, at 10.) However, NDOC inmates are required to discuss all subjects of their

17  grievance at the informal level in order to properly exhaust. (ECF No. 42, Ex. L, at 7.) If

18  an inmate raises one issue in the informal level of a grievance, but goes on to raise

19  new, distinct issues in the first or second level, they failed to properly exhaust their

20  administrative remedies and they abandon their claim. (*Id.*) Accordingly, the fact that

21  Aguilar discusses Koehn prescribing him high blood pressure medication in the first

22  and second level grievances does not remedy the failure to mention it at the informal

23  level. *Ross*, 136 S. Ct. 1855 (PLRA mandates strict compliance with the administrative

24  remedies available to inmates and court's lack to discretion to consider any "special

25  circumstances" led to the failure to strictly comply with those requirements). Since

26  Aguilar did not properly exhaust his claims regarding high blood pressure medication,

27  the Court recommends that Defendants' Motion for Summary Judgment as to Counts II

28  and IV be granted.

1              2.       *Count III and V – Sergeant Kerner*

2              In these claims, Aguilar alleges Sergeant Kerner was deliberately indifferent to

3    Aguilar's serious medical needs. (ECF No. 1-2, pp. 13 – 16.) Specifically, Aguilar

4    alleges that he began having seizure-like symptoms, but Kerner refused to take him to

5    the hospital. (*Id.*, at 13 – 14.) Rather, Kerner delayed Aguilar's transport to the hospital

6    for two hours, shouted expletives at him, and tried to get him to admit that he

7    consumed narcotics. (*Id.*) Defendants argue that Aguilar's failure to mention or grieve

8    the incident related to Kerner at the informal level means that he did not properly

9    exhaust his administrative remedies. (ECF No. 42, at 11.)

10             In opposition, Aguilar does not present any evidence to show that he did in fact

11   file an informal grievance regarding Kerner's alleged actions. (ECF No. 54.) Like the

12   claims against Koehn *supra*, Aguilar never discusses, or even mentions Kerner, at the

13   informal level of any of the grievances at issue. (ECF No. 42, at Ex. M – Q.)

14   Defendants acknowledge that Aguilar discusses Kerner's alleged abuse at the first and

15   second level of grievance number 2006-30-05091. (ECF No. 42, at 11.) However, the

16   fact that Aguilar brings up the incident with Kerner at the first and second level

17   grievances does not remedy the failure to discuss it at the informal level. (ECF No. 42,

18   at Ex. L, p. 7.). Therefore, even though these issues may have been raised at

19   subsequent levels of the grievance process, Aguilar failed to properly exhaust his

20   claims due to his failure to properly follow all of the procedural requirements necessary

21   under AR 740. *Ross*, 136 S. Ct. 1855 (PLRA mandates strict compliance with the

22   administrative remedies available to inmates and court's lack to discretion to consider

23   any "special circumstances" led to the failure to strictly comply with those

24   requirements). Since Aguilar did not properly exhaust his claims regarding Kerner's

25   alleged actions, the Court recommends that Defendants' Motion for Summary

26   Judgment as to Counts III and V be granted as related to Sergeant Kerner.

27   ///

28   ///

1

2          3.      *Count V – Warden Baker*

3          In the balance of Count V, Aguilar alleges that, as a supervisor, Warden Baker

4    violated his rights by failing to ensure that he had access to adequate medical

5    treatment and medical care. (ECF No. 1, at Ex. 2, pp. 20 – 23.) Specifically, Aguilar

6    alleges that Baker acquiesced in Koehn's alleged unconstitutional conduct. (*Id.*)

7    Defendants argue that Aguilar's failure to grieve or mention Baker's acquiescence in

8    Koehn's alleged misconduct means that Aguilar did not properly exhaust his

9    administrative remedies. (ECF No. 42, at 12.)

10         In opposition, Aguilar does not present any evidence to show that he did in fact

11   file a grievance regarding or even mentioning Baker. (ECF No. 54.) Unlike his other

12   unexhausted claims where he eventually discusses the issue in his first or second level

13   grievance, Aguilar failed entirely to mention or discuss Baker's supervisory liability at

14   any level. (ECF No. 42, at Ex. M – Q.) Accordingly, Aguilar has failed to properly

15   exhaust his administrative remedies regarding Warden Baker's supervisory liability,

16   and the Court recommends that Defendants' Motion for Summary Judgment as to

17   Count V be granted as to Warden Baker.

18         D.      Deliberate Indifference – Counts I and IV

19         1.      *Legal Standard*

20         A prison official violates the Eighth Amendment's proscription against cruel and

21   unusual punishment when they act with deliberate indifference to the serious medical

22   needs of a prisoner. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an

23   Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that

24   the deprivation was serious enough to constitute cruel and unusual punishment—and a

25   subjective standard—deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 985

26   (9th Cir. 2012). To meet the objective standard, the denial of a plaintiff's serious

27   medical need must result in the "'unnecessary and wanton infliction of pain.'" *Id.*

28   (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Serious medical needs are those

     "that a reasonable doctor or patient would find important and worthy of comment or

                                              10

1   treatment; the presence of a medical condition that significantly affects an individual's

2   daily activities' or the existence of chronic and substantial pain." *Colwell v. Bannister*,

3   763 F.3d 1060, 1066 (9th Cir. 2014*)* (citation and internal punctuation omitted).

4          To meet the subjective standard of deliberate indifference, a prison official must

5   know that a prisoner faces a substantial risk of serious harm and disregard that risk by

6   failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Only where a

7   prison "official 'knows of and disregards an excessive risk to inmate health and safety'"

8   is the subjective element of the test satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d

9   1051, 1057 (9th Cir. 2004)). A difference of opinion between a prisoner-patient and a

10  prison medical provider regarding treatment does not amount to deliberate indifference.

11  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). The

12  conduct must consist of "more than ordinary lack of due care." *Farmer*, 511 U.S. at

13  835.  Not only must the defendant prison official have actual knowledge from which he

14  or she can infer that a substantial risk of harm exists, but he or she must also draw that

15  inference." *Id.* at 837. The standard lies "somewhere between the poles of negligence

16  at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include

17  "accidental or unintentional failures to provide adequate medical care . . . ," *Estelle*, 429

18  U.S. at 105. Finally, the plaintiff must prove that he was harmed by the indifferent

19  actions, though the harm need not be substantial. *Jett*, 439 F.3d at 1096.

20          2.    Count I

21          Aguilar alleges that Koehn was deliberately indifferent to his back pain because

22  Koehn knew he was in pain, but "refused to administer proper medical care, and

23  properly treat [him] for his sciatic back pain and herniated disk" from June 29, 2015

24  through July 20, 2015. (ECF No. 1-2 at 9-10.) Defendants argue Koehn was not

25  deliberately indifferent to Aguilar's medical needs because Koehn genuinely believed

26  that Aguilar was malingering but provided him with treatment anyway. (ECF No. 42 at

27  14 – 15.)

28

To support their position, Defendants cite to Koehn's Declaration, Aguilar's Progress Notes, and a video of Aguilar. (ECF No. 42, Ex. A; ECF No. 47, Ex. D; ECF No. 42, at Ex. B.) In his Declaration, Koehn states that on July 20, 2015, nursing staff in the infirmary observed Aguilar "ambulating without difficulty." (ECF No. 42, Ex. A, p. 2.) Koehn also states that nursing staff observed Aguilar walking around without gait difficulties and exercising in the yard. (*Id.*) Defendants also point to a video preserved by Koehn from July 21, 2015, showing Aguilar walking during the period he claims he experienced back pain. (ECF No. 42, at Ex. B.) Finally, Koehn states that when he performed a physical exam of Aguilar on July 23, 2015, it did not support Aguilar's claim of lower back pain. (ECF No. 42, Ex. A, p. 2.) Koehn's progress notes corroborate all the information stated in his Declaration. (ECF No.47, Ex. D, p. 13 – 15.)

To meet the subjective prong of the deliberate indifference test, Aguilar would have to show that Koehn knew of a substantial risk of serious harm but disregarded that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. However, Defendants have introduced ample evidence demonstrating that Koehn genuinely believed Aguilar to be malingering. (ECF No. 42, Ex. A; ECF No. 4, Ex D, pp. 14 – 15.) Koehn did not infer Aguilar had a substantial risk of harm because Koehn believed that Aguilar was feigning injury. Thus, Aguilar is unable to meet the subjective standard of the deliberate indifference test.

Further, Defendants argue they are entitled to summary judgment because Aguilar received medical treatment between June 29, 2015 and July 20, 2015. (ECF No. 42 at 15.) In Koehn's declaration, he states that he saw Aguilar on May 26, 2015, and on June 18, 2015. (ECF No. 42, Ex. A.) At both visits, Koehn prescribed Aguilar with medications to treat Aguilar's back pain. (*Id.*) Koehn also states that on July 8, 2015, nursing staff prescribed Aguilar pain medication, and on July 20, 2015, they observed Aguilar walking around without difficulty. (*Id.*) Thus, contrary to Aguilar's assertion that Koehn "refused to administer proper medical care, and properly treat

[him] for his sciatic back pain and herniated disk," the record demonstrates that Aguilar received treatment from Koehn and nursing staff in the form of physical examinations and prescriptions, despite the fact that Koehn, along with nursing staff, believed that Aguilar was malingering. (ECF No. 42, Ex. A; ECF No. 47, Ex D, pp. 14 – 15.) For all the reasons listed above, the Court recommends that Defendants' motion for summary judgment as to Count I be granted.

c.    Count IV

Although the court recommends that Count IV should be dismissed for a failure to exhaust administrative remedies, this claim should also be dismissed because there is no evidence that Koehn acted with deliberate indifference with respect to this claim. As explained above, in Count IV Aguilar argues Koehn was deliberately indifferent to Aguilar's medical needs because Koehn prescribed high blood pressure medication which caused seizures, even though Aguilar had no history of high blood pressure. (ECF No. 1, Ex. 2, p. 17.) Defendants argue that Koehn was not deliberately indifferent to Aguilar's medical needs because Koehn genuinely believed that Aguilar had high blood pressure and did not know Aguilar would experience negative side effects until later. (ECF No. 42 at 16 – 17.) In support of their position, Defendants point to Koehn's declaration which notes that between May 20, 2015 and August 12, 2015, Aguilar's blood pressure ranged from 136/82 to 180/100.[3] (ECF No. 42, Ex. 1, p. 3.) Based on his belief that Aguilar had high blood pressure, Koehn enrolled him in a chronic care clinic due to hypertension on July 30, 2015. (*Id.*) Therefore, the evidence submitted by Defendants establishes that Koehn believed Aguilar was suffering from high blood pressure. (*Id.*)

By contrast Aguilar has not presented any evidence to suggest Koehn knew Aguilar did not actually have high blood pressure, nor does he present any evidence which suggests Koehn knew Aguilar would experience negative side effects from the

---

[3] Normal blood pressure is less than 120/80. Am. Heart Assoc., BP Guideline, https://targetbp.org (Aug. 15, 2018, at 12:42 p.m.)

medication. (ECF No. 52.) In fact, Aguilar admits that Koehn changed the prescription for high blood pressure medication on August 13, 2015, the day after Aguilar was released from the hospital. (ECF No. 1, Ex. A, p. 21.) This suggests that Koehn was not prescribing Aguilar high blood pressure medication to make him ill, rather, Koehn was doing so to treat what he perceived to be high blood pressure. For all the reasons discussed above, the Court recommends that Defendants' motion for summary judgment as to Count IV be granted on this additional basis.

        D.      Personal Participation

             1.    *Legal Standard*

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir.1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains*]." Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009).

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) Where the defendant's only involvement in the allegedly unconstitutional

conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). However, the issue of whether responding to a grievance can rise to the level of personal participation required for a § 1983 claim was addressed in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds* in *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the denial of a recommended hip surgery; there was testimony that the warden and associate warden were aware of the grievances, and that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at 989. Defendants argued that there was no evidence in the record that they were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said that their review of the grievance was sufficient to demonstrate that the warden and associate warden were aware of the inmate's serious hip condition and failed to act to prevent further harm so that the warden and associate warden were not entitled to summary judgement based on lack of personal participation. *Id.*

2.      *Analysis*

Although the court recommends that Count V should be dismissed for a failure to exhaust administrative remedies as it relates to Warden Baker, this claim should also be dismissed because there is insufficient evidence to establish Warden Baker personally participated in any of the claims in this case. Aguilar argues that Warden Baker violated his rights because she acquiesced in Koehn's alleged deliberate indifference. (ECF No. 1, at Ex. A, p. 20 – 23.) Specifically, Aguilar alleges that Baker has supervisory liability because she was Koehn's supervisor at the time of the alleged incident and was aware of Koehn's actions because of the grievances. (ECF No. 54, p. 4 – 7.) Defendants argue that Baker is not liable because she did not personally participate in any of the alleged constitutional deprivations. (ECF No. 42, at 18.) In opposition, Aguilar reiterates his argument that Baker is liable as a supervisor because she was aware of Koehn's actions but failed to intervene. (*Id.*, at 4.)

To support their position, Defendants point to Warden Baker's Declaration. (ECF No. 42, at Ex. J.) In her Declaration, Baker states that she was not aware of Aguilar's claim that Koehn refused to treat him. (*Id.*) Further, Baker states that she reviewed Aguilar's medical kites and grievances but did not find evidence that she responded to any of them. (*Id.*) Defendants point out that this is consistent with AR 740 "because as the warden of ESP, she is not a member of the medical staff and therefore would not respond to medical issues." See ECF No. 42, Exhibit L at AR 740.05(2)(E); AR 740.06(1)(B); AR 740.07(1)(D). In order to sustain a § 1983 claim, Aguilar would have to show that Baker personally participated in the alleged constitutional deprivation, but he is unable to meet this burden. *Taylor*, 880 F.2d at 1045. Even if Aguilar could demonstrate that Baker personally participated, Koehn's actions did not violate a constitutionally protected right. For all the reasons discussed above, the Court recommends that Defendants' motion for summary judgment as to Count V as is relates to Warden Baker be granted.

## IV.  CONCLUSION

Based upon the foregoing, the Court recommends Defendants' motion for summary judgment be granted, and Plaintiff's cross-motion for summary judgment should be denied.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

V.    **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 42) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's cross-motion for summary judgment (ECF No. 54) be **DENIED**.

**IT IS FURTHER RECOMMENED** that judgment be entered accordingly and this this case be closed.

**DATED**: February 19, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**