UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSE AGUILAR,

                Plaintiff,

v.

MICHAEL KOEHN, *et al.*,

                Defendants.

Case No. 3:16-cv-00529-MMD-CBC

ORDER

**I.    SUMMARY**

Before the Court is the Amended Report and Recommendation of United States Magistrate Judge Carla B. Carry ("R&R") relating to the parties' cross motions for summary judgment (ECF Nos. 42, 54). (ECF No. 67.) Judge Carry recommended that this Court grant summary judgment in favor of Defendants on all claims. (*Id.*)[1] Plaintiff has filed an objection ("Objection") (ECF No. 69) to which Defendants have responded (ECF No. 70).[2,] For the reasons stated below, the Court accepts and adopts the R&R in part and deny it in part and accordingly overrules the Objection in part and sustains it in part.

**II.    BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections

///

---

[1]Defendants are Dr. Michael B. Koehn, Warden Renee Baker, Sergeant Officer Kerner. Plaintiff also sued the State of Nevada, but the Court dismissed the state based on sovereign immunity. (ECF No. 7 at 3 & n.1.)

[2]Plaintiff also filed a motion regarding the credibility of video evidence Judge Carry relied on in the R&R (ECF No. 68; ECF No. 67 at 12). The Court construes that motion as part of Plaintiff's Objection and will grant the motion. However, the Court finds that the video is immaterial to its finding on the relevant claim pertaining to Koehn, discussed *infra*.

In addition to the record evidence, the Court has considered Defendants' motion for summary judgment (ECF No. 42), Plaintiff's cross-motion for summary judgment/opposition to Defendants' motion (ECF Nos. 53, 54 (duplicative documents)) and Defendants' Reply/opposition to Plaintiff's cross-motion (ECF No. 64).

("NDOC"). (ECF No. 1-2.) He filed this civil rights action concerning events that took place while incarcerated at Ely State Prison ("ESP"). (ECF No. 1-2 at 2; ECF No. 7 at 3.)

Following screening, the Court allowed Plaintiff to proceed with several claims under the Eighth Amendment for deliberate indifference to Plaintiff's serious medical needs. (ECF No. 7 at 6–7.) The Court particularly permitted the following claims against each Defendant:

<u>Defendant Koehn</u>: Plaintiff was permitted to proceed on two separate grounds: (1) based on Plaintiff's allegations that Koehn repeatedly refused to see Plaintiff for treatment, despite Plaintiff's medical grievances that he was "suffering from extreme and excruciating back pain"; and (2) for prescribing Plaintiff high blood pressure ("HBP") medication, allegedly despite knowing that Plaintiff did not have high blood pressure and Koehn knew the HBP medication would cause Plaintiff to have seizures. (*id.* at 8–9.)

<u>Defendant Kerner</u>: Plaintiff alleges that Kerner delayed Plaintiff's transport to the hospital for over two hours albeit Plaintiff experiencing seizures because Kerner wanted to interrogate Plaintiff of drug/narcotic use. (ECF No. 7 at 9.) Kerner allegedly delayed Plaintiff's transport despite Plaintiff telling Kerner he took no drugs beyond his HBP medications. (ECF No. 1-2 at 14–15, 22; ECF No. 7 at 5.)

<u>Defendant Baker</u>: Plaintiff alleges supervisory liability based on allegations that Plaintiff sent Baker grievances and request forms regarding Koehn's refusal to treat Plaintiff's pain for months. (ECF No. 7 at 10.)

Further relevant background is explained in the R&R (ECF No. 67 at 2–3). The Court adopts these facts.

**III. LEGAL STANDARD**

**A. Review of Magistrate Judge's Recommendation**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and

recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *id.* at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

In light of Plaintiff's Objection, this Court finds it appropriate to engage in a *de novo* review to determine whether to adopt Magistrate Judge Carry's R&R. Upon reviewing the R&R, briefs and records in this case, this Court adopts the R&R in part and reject it in part.

**B.    Summary Judgment Standard**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the

moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *William W. Schwarzer, et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. DISCUSSION

The Court will accept the R&R in part and reject it in part on the merits and on the exhaustion findings.

### A. Exhaustion

As a threshold issue, Judge Carry recommended granting summary judgment to Defendants for Plaintiff's failure to exhaust the claims against Kerner and Baker and the part of the claim against Koehn based on Koehn's prescription of the HBP medication. (ECF No. 67 at 8–10.) In doing so, Judge Carry agreed with Defendants that (1) Plaintiff's failure to exhaust the stated claims against Koehn and Kerner at the informal grievance level renders dismissal of those claims appropriate, and (2) Plaintiff's failure to grieve the

supervisor liability claim against Baker at any level renders dismissal of that claim appropriate. (*Id.*; ECF No. 42 at 9–12.) The Court agrees in part and disagrees in part.

The Prison Litigation Reform Act of 1996 ("PLRA"), codified as 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A defendant must plead and prove a plaintiff's failure to exhaust pursuant to the PLRA as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The PLRA requires "proper exhaustion"—meaning that a prisoner must use "all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91. Here, the pertinent grievance process is set forth in NDOC's current Administrative Regulations ("AR") 740. (ECF No. 47-8.) Under AR 740, an inmate must comply with the sequential three-step grievance procedure—informal level, then first level, then second level—to resolve his redressable claims. (*Id.* at 5–10.)

However, whether a defendant may avail his/her self of the exhaustion defense despite a plaintiff's failure to comply with AR 740's procedural guidelines depends on whether prison officials nonetheless responded on the merits of the plaintiff's grievance. *Reyes v. Smith*, 810 F.3d 654, 657–58 (9th Cir. 2016) (collecting cases). In *Reyes*, the Ninth Circuit adopted sister circuit precedent, concluding that as to exhaustion what matters is whether prison officials ignored procedural problems with a plaintiff's grievance and responded on the merits. *Id.* The Ninth Circuit found:

> "[W]hen prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served. Prison officials have had the opportunity to address the grievance and correct their own errors and an administrative record has been developed . . . the exhaustion requirement have been fully served . . .

///

///

5

*Id.* The circuit court concluded that "[d]ismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison administration." *Id.* at 658 (citation omitted); *see also id.* (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.").

Based on the foregoing, the Court agrees that Plaintiff's failure to grieve the claim against Baker at any level renders dismissal of that claim appropriate because Defendants have been deprived of the opportunity to exhaust that claim. (*See* ECF No. 42-9 (the relevant grievance documents); ECF No. 42-14 (history of grievances).) Accordingly, the Court adopts Judge Carry's recommendation to grant dismissal on the claim against Baker.

The Court however disagrees with Judge Carry that Plaintiff's failure to grieve the relevant claims against Koehn and Kerner entitles Defendants to summary judgment on the failure to exhaust defense. Defendants essentially waived this defense as to these claims. *See, e.g.*, *Holden v. Nevada ex rel. Nev. Dep't of Corrs.*, No. 3:16-cv-00064-MMD-WGC, 2018 WL 4566253 (D. Nev. Sept. 24, 2018) (discussing *Reyes* and *Watts v. Nguyen*, 671 F. App'x 444 (9th Cir. 2016)). Although Plaintiff failed to raise either the HBP medication issue against Koehn or the claim against Kerner at the informal grievance level (ECF No. 42-9 (Log Number 2006-30-05091) at 2), Plaintiff raised both issues in his response to the applicable official informal level response and first level grievance (ECF No. 5, 7–9). Plaintiff also raised these issues in his second level grievance (*Id.* at 13–15). At each of the latter levels, Defendants ruled on the merits of Plaintiff's grievance without raising or enforcing any procedural bar. (*Id.* at 10 (official response to first level grievance); *id.* at 19 (official response to second level grievance); ECF No. 42-14.)

Accordingly, this Court concludes that the exhaustion defense does not entitle Defendants to summary judgment on the relevant claims against Koehn and Kerner. The

1 | Court thus rejects Judge Carry's recommendation to grant summary judgment based on exhaustion. The Court will therefore consider whether Plaintiff has met his burden to otherwise establish that Defendants were deliberately indifferent to his serious medical needs.

### B. Deliberate Indifference

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, *medical care*, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) (emphasis added). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). The subjective requirement demands that the prison official must be aware of and disregard the risk to the inmate's health or safety. *Id.* at 837; *see also id.* at 834 (internal quotation and citation omitted) ("The second requirement follows from the principle that only the unnecessary wanton infliction . . . implicates the Eighth Amendment."). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citation omitted). But ultimately, a showing of deliberate indifference requires a plaintiff show (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Id.*

///

### 1. Koehn

Judge Carry found that Plaintiff failed to establish his deliberate indifference claim against Koehn on both grounds upon which Plaintiff was permitted to proceed. (ECF No. 67 at 8–14.) Specifically, Judge Carry first concluded that Defendants are entitled to summary judgment on Plaintiff's claim that Koehn refused to "properly" treat him for "his sciatic back pain and herniated disk" between June 29, 2015 and July 20, 2015, because (1) Koehn believed Plaintiff to be feigning injury and (2) Koehn did in fact provide Plaintiff treatment for his back pain. (*Id.* at 11–13; *see also* ECF No. 69 at 2 (objection providing same dates).) Judge Carry next found that Defendants are entitled to summary judgment on Plaintiff's HBP medication claim because the evidence supports Defendants' position that Koehn genuinely believed Plaintiff had HBP and Plaintiff presents no evidence that Koehn knew Plaintiff did not actually have HBP. (ECF No. 67 at 13–14.) The Court agrees that Defendants are entitled to summary judgment on both grounds.

#### a. Back Pain

In his Objection, Plaintiff first challenges what appears to be Defendants' position regarding Plaintiff's back pain at relevant times—that Plaintiff was not actually suffering from back pain. (ECF No. 69 at 1–2, 4.)[3] Plaintiff further challenges the R&R's apparent finding that on July 21, 2015, Plaintiff was recorded on video "walking around without gait difficulties and exercising in the yard." (*Id.* at 2, 4; ECF No. 68; ECF No. 67 at 12 (making

///

---

[3] In his Objection, Plaintiff also seeks to have his medical records unsealed. (ECF No. 69 at 4.) Plaintiff's reason for the request appears to be his belief in what the records will show the Court. However, the Court is able to view the sealed records—and has reviewed and considered the medical records (ECF Nos. 47, 47-1, 47-2, 47-3) here. Moreover, the sealing of the records was for the purpose of protecting Plaintiff's private information from being readily available to the public (ECF No. 55). If provided with this information and after the issuance of this order Plaintiff would like to have his medical records unsealed, the Court will do so upon his reinstated request. Plaintiff also requests appointment of counsel because he is "not acquainted with civil 1983 U.S.C." (ECF No. 69 at 4.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the Court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). The Court finds that, at this time, Plaintiff has not provided a sufficient reason to have appointed counsel. *See e.g.*, *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) (explaining that a litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims).

finding).) Without citation to the record, Plaintiff contends that "Dr. Koehn was aware that [he] was not malingering and refuse to treat [him]." (ECF No. 69 at 2.) The Court overrules Plaintiff's objections.

Whether Defendants believed or lacked reason to believe that Plaintiff was faking his back pain is essentially irrelevant because the record amply demonstrates that Plaintiff was continuously treated for his back pain. (*See, e.g.*, ECF No. 47 (sealed); ECF No. 47-1(sealed) (Plaintiff's progress reports) at 16–17; ECF No. 47-3 at 24–30 (medical kites/service reports); ECF No. 1-2 at 40 (. . . on all those dates I was simply given standard pain medication and pain ointment, with the exception of "Medrol dose pack, which only slightly helped"); ECF No. 42-9 at 10 (official response explaining the treatment Plaintiff had been receiving for his back pain between June 17, 2015 and July 20, 2015); ECF No. 42-1 at 2–3 (Koehn's declaration regarding the treatment provided to Plaintiff during the relevant time frame).)

Nonetheless, it appears Plaintiff's real qualm is his belief that the treatment he received did not (or does not) amount to "proper treatment." (*See, e.g.*, ECF No. 1-2 at 45 (indicating a general practitioner beyond Koehn was need), *id.* at 46 (seeking "The proper Medical treatment"); *id.* at 48 ("All I'm asking to get the proper treatment.").) However, Plaintiff's belief amounts to a difference of opinion with his medical provider which cannot support a finding of deliberate indifference. *See, e.g.*, *Franklin v. Oregon, State Welfare Div.*, 662 F.3d 1337, 1344 (9th Cir. 1981) (providing that a "difference of opinion between a prisoner-patient and a prison medical provider regarding treatment does not amount to deliberate indifference"). Moreover, a failure to provide Plaintiff with "proper" treatment at most closely arises to a claim of gross negligence which falls short of a finding of deliberate indifference. *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). Accordingly, the Court accepts and adopts the R&R's recommendation that Defendants be granted summary judgment on this claim.

### b. HBP Medication

Plaintiff next objects to Judge Carry's finding that Koehn's provision of HBP medication to Plaintiff did not amount to deliberate indifference. (ECF No. 67 at 13–14; ECF No. 69 at 2–3.) Plaintiff focuses on the time after he returned from the hospital on August 12, 2013. (ECF No. 69 at 2–3; *see also* ECF No. 47-2 at 3 (evidencing Plaintiff at hospital on August 10, 2015); *id.* at 11 (noting Plaintiff as "admitted" on August 11, 2015).) Plaintiff claims, without citation to the record, that Koehn told nurses to continue to give Plaintiff HBP medication even after Koehn "got the results from hospital" finding Plaintiff did not have HPB. (ECF No. 69 at 3.) For context, the pertinent hospital records note as follows:

> "Suspect that hyponatremia/hypokalemia may have been due to HCTZ that he was on. . . . MEDICATIONS: He hasn't required BP meds while in the hospital and his BP has been under control. This can be followed up by prison physician. Would recommend that should he require BP med, that he NOT be placed on diuretics due to the resultant hyponatremia/hypokalemia."

(ECF No. 47-2 (sealed) at 12, 25.) While the hospital records indicate Plaintiff's blood pressure was under control without medication during his time there, the record left it up to Plaintiff's prison doctor to determine the necessity of blood pressure medication. Further, Plaintiff admits that Koehn changed the HBP medication after Plaintiff returned from the hospital (ECF No. 1-2 at 8). Finally, the evidence supports that Koehn had reason to believe that Plaintiff had high blood pressure. Specifically, as Judge Carry highlighted (ECF No. 67 at 13), Koehn's declaration indicates that between May 20, 2015 and August 12, 2015, Plaintiff's blood pressure range was higher than normal. (ECF No. 42-1 at 4.) Accordingly, the Court agrees with the R&R that Plaintiff fails to establish that Koehn was deliberately indifferent to his serious medical needs by giving him HBP medication. Thus, the Court accepts and adopts the R&R's recommendation to grant Defendants summary judgment on this ground.

///

///

///

### 2. Kerner

Beyond recommending dismissal for failure to exhaust, the R&R does not address the substance of Plaintiff's claim against Kerner. (*See generally* ECF No. 67.) Because the Court finds that Plaintiff has properly exhausted this claim, the Court will address the parties' arguments as to the merits. Upon reviewing the relevant arguments in the parties' cross-motions for summary judgment and the record, the Court finds neither party is entitled to summary judgment on this claim.

Plaintiff contends that video evidence supports his claim that Kerner was deliberately indifferent by delaying his transportation to the hospital solely to get Plaintiff to admit to taking drugs/narcotics. (ECF No. 69 at 3–4; ECF No. 1-2 at 16; ECF No. 54 at 3.) Plaintiff contends that, per policy, Defendants were required to videotape the incident. (ECF No. 69 at 5 (citing "Exhibit E").) The relevant policy appears to be Operational Procedure ("OP") 405(3.) (ECF No. 1-2 at 87.)

Defendants argue that OP 405(3.) does not apply to Plaintiff's case because the policy merely "sets forth ESP's procedure for a planned use of force, including a planned cell extraction" (ECF No. 64 at 5) and thus "no video exists of this [unplanned] incident" (*id.* at 6). The Court reads the policy more broadly than Defendants' preferred reading. In addition to use of videotape for planned use of force, OP 405(3.) provides:

> Portable Audiovisual cameras will be utilized by those staff that have been certified to use the video camera to record all instances where there is a planned Use of Force or a planned action where it is probable that force will be necessary *and to record all major disturbances* or group insubordination.
>
> *In instances of spontaneous Use of Force, such equipment will be activated as soon as possible* by staff certified to use the video camera to record the remaining action.

(ECF No. 1-2 at 87 (emphasis added).) Thus, OP 405(3.) expressly covers events other than planned use of force.

Defendants next argue that OP 405(3.) does not apply here because officers did not subject Plaintiff to force. (ECF No 64 at 5–6.) However, Plaintiff's Complaint and grievances assert that Plaintiff was subject to the use of restraints (handcuffs)—a trier of

11

fact can decide whether such amounts to force. (*See, e.g.*, ECF No. 42-9 at 7 ("[Kerner had me handcuffed while I was having seizures."); ECF No. 1-2 at 22 ("all while in restraints").) Notably, the entire OP 405 concerns use of force and lists "restraints" as a non-deadly use of force. (ECF No. 1-2 at 81-82, 85 (OP 405(2.)).)

Defendants otherwise contend that NDOC's incident report supports their claim that Kerner did not delay Plaintiff being transported to the hospital (ECF No. 64 at 6 (citing ECF No. 42-6 (Defs.' Exhibit I)) and that NDOC's reports show that Kerner was assigned to laundry on the day of the incident and was not present or involved when Plaintiff was evaluated on August 10, 2015. (ECF No. 42 at 3, 17.) Defendants' position is precisely that Kerner's alleged conduct did not occur. (ECF No. 70 at 3.) However, Plaintiff disputes Kerner's claim of being absent and Plaintiff's position is that the video recording that should be available pursuant to OP 405(3.) will prove otherwise. To be clear, Plaintiff has consistently insisted that the incident was recorded—for example, he recalls in his second level grievance:

> My body begins to go into shock! Medical staff immediately calls for the Gurney, I am having violent seizures and all of this is being recorded on 2 separate Recording Camera Devices. #1 is the unit security camera and the other is on a hand held Recording device that is being operated by cert SGT. per the Mandatory O.P. operating procedures. Both Recording Devices cameras will <u>clearly show</u> that I was having seizures and that my Body was going into shock!! I am then taken into the infirmary where for the next 2 ½ Hours I am verbally assaulted and Maliciously spoken down to by SGT. Kerner!

(ECF No. 42-9 at 14; *see also* ECF No. 1-2 (Complaint) at 16.) Plaintiff's allegations coupled with NDOC's policy as stated in OP 405(3.), when construed in the light most favorable to Plaintiff, could lead a rational trier of fact to believe Plaintiff and disbelieve Kerner.[4] The Court thus concludes that a genuine issue of material fact exists as to

///

---

[4]While Plaintiff asserts that he would have subpoenaed the video with additional time for discovery (ECF No. 54 at 3), Defendants are obligated to disclose any video evidence without request by Plaintiff under Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 23(a)(1)(A)(ii). ("[A] party must, without awaiting a discovery request, provide to the other to the other parties: . . . a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, . . . or control and may use to support its claims or defenses."). Accordingly, Defendants' discovery argument in their response to the Objection (ECF No. 70 at 3) is immaterial.

whether Kerner delayed medical treatment for Plaintiff that precludes summary judgment for either party.

Neither party is entitled to summary judgment for the additional reason that both fail to argue the harm component of establishing a deliberate indifference claim. *See Penner*, 439 F.3d at 1096 (noting that harm must be shown). Defendants simply fail to argue the issue; Plaintiff merely states that Kerner's treatment "led to injury." (ECF No. 54 at 4; *see generally* ECF No. 69.)

Accordingly, the Court denies summary judgment on the deliberate indifference claim against Kerner and rejects the R&R to the extent it recommends otherwise.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the Report and Recommendation of Magistrate Judge Carla B. Carry (ECF No. 67) is accepted and adopted in part and reject and denied in part.

It is further ordered that Defendants' motion for summary judgment (ECF No. 42) is granted in part and denied in part. Defendants' motion is granted on the claims against Koehn and Baker but denied on the remaining claim against Kerner. Said differently, Plaintiff's claim against Kerner survives summary judgment.

It is further ordered that Plaintiff's cross-motion (ECF No. 54) is denied.

It is further ordered that Plaintiff's Objection (ECF No. 69) is overruled in part and sustained in part.

It is further ordered that Plaintiff's motion of important facts (ECF No. 68) is granted.

DATED THIS 11th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE